# Exhibit 2

Case No. 1:26-cv-03674-JEB

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al*.,<br><br>Plaintiffs,<br><br>*v*.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al*.,<br><br>Defendants. | Case No. 1:26-cv-03674 |

**DECLARATION OF FRANCISCO VERDUGO AGUILAR**

I, Francisco Verdugo Aguilar, declare as follows:

1. I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2. I am the Secretary of State of Nevada, a position I have served in since 2023 after winning election to the role in November 2022. In my capacity as Secretary of State, I serve as Nevada's chief election officer, meaning that my staff and I are responsible for election management and voter registration throughout Nevada. I am also a candidate for reelection in the November 3, 2026 general election. Prior to becoming Secretary of State, I served on the Nevada State Athletic Commission and worked as special counsel for the chancellor of the Nevada System of Higher Education.

3. During my tenure as Secretary of State, I have overseen the implementation of a statewide election management and voter registration system, which has significantly streamlined election administration and improved election security in Nevada. I have also overseen implementation of other changes to modernize Nevada's election system, including procedures to

allow local officials to begin tabulating ballots earlier. Protecting the integrity of Nevada's elections—and the civil servants responsible for administering them—is a top priority for me. After Nevada's election system came under national scrutiny following the 2020 election, I championed legislation to protect Nevada's election workers and prevent intimidation and coercion.

4. Nevada has continued to face pressure from the federal government concerning its voter registration and election management procedures. In particular, beginning in the summer of 2026, I received a series of threatening communications from officials in the Department of Homeland Security ("DHS") alleging that large numbers of noncitizens were registered to vote in Nevada.

5. On July 16, 2026, DHS officials sent a letter to me claiming that 15,903 potential noncitizens were on Nevada's voter rolls, including 8,576 whose name, date of birth, address, and Social Security number matched a known noncitizen. I responded on July 29, highlighting my commitment—and the commitment of all election workers in Nevada—to ensuring that only U.S. citizens vote in Nevada elections. Accordingly, I asked DHS to provide additional details to substantiate its claims that thousands of noncitizens were registered on Nevada's voter rolls, including the methodology it used to assess voters, the data it consulted, and how it accounted for naturalized citizens, who make up a substantial portion of Nevada's citizen population.

6. On August 13, my staff met with DHS officials, who acknowledged that DHS's estimate of 15,903 noncitizens was not based on a manual review of individual voters. DHS stated that it had identified 185 registered voters who were purportedly "confirmed" as noncitizens. My staff then evaluated each of these 185 individuals and found that all 185 appeared to be citizens, and that none of the information provided by DHS suggested otherwise.

7. On September 9, DHS again emailed my office and insisted that we investigate the original set of 15,903 individuals it had purportedly identified as noncitizens. But DHS never actually provided my office with this list, and instead provided a shorter subset of voter case numbers. As I subsequently explained to DHS, these numbers are not useful for investigating specific voters because Nevada recently moved to a new statewide voter registration and management system, and these older voter case numbers are likely to contain duplicates across counties.

8. Also on September 4, the Acting Chief of the Voting Section in the Civil Rights Division at the Department of Justice sent me a letter indicating I was "under investigation and ongoing litigation as to the extent to which [I had] failed to comply with [my] duties" under various federal statutes. The letter demanded that I preserve certain records and threatened "civil and criminal sanctions" for failure to do so. A true and complete copy of that September 9 letter is attached as Exhibit A.

9. Throughout this period, both President Trump and DHS Secretary Mullin made numerous false claims about Nevada's voter rolls, even as DHS failed to provide my office with reliable information to support its extreme claims. Many of these statements directly threatened me and my staff. For example, Secretary Mullin claimed on July 17 that DHS had "identified 250,000 noncitizens registered to vote" across several states, including Nevada.[1] As described above, Secretary Mullin and DHS failed to back up their claims of confirmed noncitizens on Nevada's rolls. Even so, Secretary Mullin has threatened state election officials, including me,

---

[1] Gabe Cohen, *Trump Officials Touted a Voter Fraud Bombshell. Their Data Hasn't Proved It.*, CNN (Aug. 21, 2026), https://www.cnn.com/2026/08/21/politics/markwayne-mullin-voter-fraud-nevada.

with prison time for failing to act on DHS's information.

10. Specifically, Secretary Mullin gave a speech on July 17 where he stated: "If the election officials, once we gave them the information they need to secure their elections, and they chose not to, then those individuals can also be held accountable by fines, by penalties, and even, depending on how far it goes, prison time."[2]

11. On top of these threats and the correspondence with DOJ and DHS, DOJ has served seven grand jury subpoenas on my office between June and September. Responding to these politically motivated subpoenas has placed a substantial burden on my staff in the run-up to the November 3 election. So far as I am aware, it is extremely uncommon—and perhaps unprecedented—for a Secretary of State to receive so many election-related subpoenas so close in time to an election.

12. The federal government's conduct has had a severe chilling effect on my staff, who are worried about legal retaliation and harassment for simply carrying out their jobs. Relatedly, my office has had to take the unprecedented step of issuing guidance to local election officials and workers about what to do if armed federal agents appear at polling locations while voting is occurring, or if federal officers attempt to seize ballots. Many of my colleagues in other States are doing the same. To my knowledge, no prior Nevada Secretary of State has been required to issue similar guidance about such extreme scenarios.

13. I am also aware of public reports regarding DOJ's demand that California refuse to issue ballots to certain registered voters or segregate those ballots once they are returned. I am

[2] Rebecca Shabad, *Homeland Security Secretary Markwayne Mullin threatens states over elections*, NBC News (July 17, 2026), https://www.nbcnews.com/politics/elections/homeland-security-secretary-markwayne-mullin-threatens-states-election-rcna588002.

extremely worried that DOJ is likely to pursue similar efforts in Nevada either in the run-up to the November 3 election or during the counting and certification phase afterwards. Indeed, NBC News has reported that Nevada is already a likely target for DOJ because of the mail-voting system that I have helped to administer during my term.[3]

14. My office and staff are therefore preparing for further interference in our election process as November 3 approaches. Such interference is likely to prove immensely disruptive to Nevada's election procedures, including the timely tabulation and certification of results. My staff works extremely hard with limited resources to conduct honest, fair, and efficient elections for the people of Nevada, but further federal interference may strain those efforts beyond their breaking point. Moreover, the threat of such imminent interference has caused further strain and burden on my staff, who are already fearful of retaliatory measures from DOJ and other federal agencies.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 10/26/2026

Francisco Aguilar

**Francisco Verdugo Aguilar**

[3] Julia Ainsley et al., *DOJ Weighs Election Litigation Against More States*, NBC News (Oct. 21, 2026), https://www.nbcnews.com/politics/justice-department/doj-weighs-election-litigation-states-rcna604872.

# Exhibit A

**U.S. Department of Justice**

Civil Rights Division

*Voting Section - 4CON*
*950 Pennsylvania Ave, NW*
*Washington, DC 20530*

September 4, 2026

Via Electronic Mail

Francisco V. Aguilar
Nevada Secretary of State
101 N Carson Street Suite 3
Carson City, Nevada 89701

Re: Maintenance of All Election Records in Your Possession as Chief Election Officer During Pending Litigation

Dear Secretary Aguilar:

We represent the United States in enforcing your duties as the chief election officer in Nevada under the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. As you are aware, you are currently under investigation and ongoing litigation as to the extent to which you have failed to comply with your duties under the CRA as well as the National Voter Registration Act ("NVRA"), codified at 52 U.S.C. § 20501 *et seq.*, and Help America Vote Act of 2002 ("HAVA"), codified at 52 U.S.C. § 20181, *et seq.* You were initially put on notice of this investigation based on our letters to your office in 2025 and the subsequent litigation that followed. These letters notified you of your duty to preserve election records which have come into possession under the CRA for the prior 22 months, including records from the 2024 federal election.

The purpose of this letter is to notify you of your obligations to take reasonable steps to conduct a litigation hold and preserve and retain all hard copy documents and electronically stored information ("ESI"), as defined by Rule 34 of the Federal Rules of Civil Procedure, which may be relevant, or likely to lead to the discovery of admissible evidence. The duty to preserve records supersedes any statutory limitations, especially where the party "has notice that the evidence is relevant to litigation." *Thompson v. U.S. Dept. of Housing and Urban Development*, 219 F.R.D. 93, 100 (D. Md. 2003). While the CRA requires that election officials preserve election records for 22 months after an election, this Litigation Hold letter would override any argument that you would now be authorized to destroy such records related to the 2024 election. The SVRLs and other election records relevant to the 2024 election, as well as current records, are relevant to the litigation.

To fulfill your preservation obligation, you must take reasonable steps to preserve all hard copy documents and ESI which constitute Relevant Information, including, but not limited to:

(a) Suspending your document and data destruction and backup tape recycling policies;

(b) Retaining software, hardware, or other information required to access or view the ESI, such as:

1. identification codes;
2. passwords;
3. decryption applications;
4. decompression software;
5. reconstruction software;
6. network access codes;
7. manuals; and
8. user instructions;

(c) Taking special measures to ensure the preservation of:

1. archived or deleted ESI;
2. ESI stored in a database;
3. computer logs;
4. metadata, including the date ESI was created, the date ESI was last modified, the name of the individual who created the ESI as well as all other metadata fields; and

(d) Taking any other reasonable steps necessary to prevent the destruction, loss, override, or modification of relevant data, either intentionally or inadvertently, such as through modification of your document retention policy and systems.

To make this clear - All ESI must be preserved intact and without modification. The above list is not exhaustive, and you must preserve all information that is potentially relevant to any lawsuit the United States files against you.

Your failure to preserve relevant data may constitute spoliation of evidence, which may subject you to civil and criminal sanctions. We trust that you will preserve for the duration of our investigation and any subsequent litigation all Relevant Documents. In the event of a dispute arising out of your failure to preserve documents, we will rely on this letter in court as evidence of our request for litigation hold and notice of your preservation obligations.

Please direct any questions to Eric Neff, Acting Chief of the Voting Section, at Eric.Neff@usdoj.gov. Failure to preserve and then timely produce the requested records upon further request may result in the United States seeking a court order for production of such records. 52 U.S.C. § 20705.

Thank you in advance for your cooperation.

Regards,

Eric Neff
Acting Chief, Voting Section
Civil Rights Division

cc: Attorney Emily Espinosa De Los Monteros (edespinosa@ag.nv.gov)