IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DSCC, *et al.,*

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Defendants*.

Civ. A. No. 26-3674 (JEB)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..................................................................................... ii

STATEMENT OF FACTS ..................................................................................... 1

LEGAL STANDARD ..................................................................................... 4

I. Subject Matter Jurisdiction ..................................................................................... 4

II. Federal Rule of Civil Procedure 26(d) ..................................................................................... 5

ARGUMENT ..................................................................................... 6

I. Plaintiffs Lack Standing and, Therefore, Are Not Entitled to Any Relief. .................... 6

II. Plaintiffs' Request for Expedited Discovery is Unnecessary and Unwarranted. ........... 9

A. There is a Pending TRO/PI Motion, But Plaintiffs' Counsel Admitted That Expedited Discovery Was Not Needed to File the TRO/PI Motion. ..................................................... 9

B. Plaintiffs' Proposed Requests Are Not Narrowly Tailored to the TRO/PI Motion. ..... 11

C. The Burden on the Government is Very High. ..................................................... 12

CONCLUSION ..................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Attkisson v. Holder*,
113 F. Supp. 3d 156 (D.D.C. 2015) ... 6, 10, 11, 12
*Bost v. Illinois State Bd. of Elections*,
607 U.S. 71 (2026) ... 8
*Clapper v. Amnesty Int'l*,
568 U.S. 398 (2013) ... 7
*Does 1-9 v. Dep't of Justice*,
No. 25-cv-0328 (JMC), 2025 WL 894120 (Mar. 22, 2026) ... 9, 11
*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
319 F. Supp. 3d 70 (D.D.C. 2018) ... 6
*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ... 5, 9
*Guttenberg v. Emery*,
26 F. Supp. 3d 88 (D.D.C. 2014) ... passim
*Haase v. Sessions*,
835 F.2d 902 (D.C. Cir. 1987) ... 5
*Hikma Pharms. USA Inc.*,
608 U.S. ... 6
*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ... 5
*Logan v. Dep't of Veterans Affairs*,
357 F. Supp. 2d 149 (D.D.C. 2004) ... 5
*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ... 5, 6, 7
*Mich. Welfare Rts. Org. v. Trump*,
600 F. Supp. 3d 85 (D.D.C. 2022) ... 5
*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
366 F.3d 930 (D.C. Cir. 2004) ... 8
*Petroleum Info. Corp. v. Dep't of Interior*,
976 F.2d 1429 (D.C. Cir. 1992) ... 14
*Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*,
575 F. Supp. 3d 34 (D.D.C. 2021) ... 14
*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
489 F.3d 1279 (D.C. Cir. 2007) ... 7
*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ... 7
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ... 5, 7

Rules

Fed. R. Civ. P. 26(d)(1) .......... 5
Fed. R. Civ. P. 26(f) .......... 6
Federal Rule of Civil Procedure 26(d) .......... i, 5

## INTRODUCTION

Defendants, through counsel, respectfully request that the Court deny Plaintiffs' Motion for Expedited Discovery ("Pl. Mot."), ECF No. 16. First, there are serious questions of whether the Court has subject matter jurisdiction to enter the relief requested. Second, expedited discovery at this juncture – *i.e.,* seven days before the General Election on November 3, 2026 – is unnecessary and unwarranted. Plaintiffs' counsel conceded this in Court during the scheduling conference on October 26, 2026. Third, Plaintiffs cannot demonstrate that their request for expedited discovery is reasonable under the district's five-factor analysis. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014). Moreover, last night, Plaintiffs just filed a nationwide TRO/PI motion (without discovery), which confirms that they can seek the relief they desired based on the existing record. Even if some expedited discovery could be reasonable—and it is not—Plaintiffs' requests are overbroad, facially seek privileged, deliberative and law-enforcement-sensitive information, and risk creating and causing public confusion in a manner inconsistent with Plaintiffs' stated harms. Therefore, for the reasons stated in this brief and to be articulated at the hearing on October 29, 2026, the Court should deny Plaintiffs' motion.

## STATEMENT OF FACTS

Plaintiffs, the DSCC, DCCC, Democratic Governors Association, U.S. Senate Minority Leader Charles E. Schumer, U.S. House of Representatives Minority Leader Hakeem S. Jeffries, Nevada State Democratic Party, and Erick Jose Jiminez ("Plaintiffs"), filed their Complaint ("Compl.") on October 20, 2026. ECF No. 1. Plaintiffs served the Complaint on Defendants on October 22, 2026. *See* Return of Service/Affidavit, ECF No. 18.

This case involves three constitutional claims – the Elections Clause, Vertical Separation

of Powers, and the Anticommandeering Doctrine – and a challenge under Section 11(b) of the Voting Rights Act. Complaint ("Compl."), ECF No. 1, ¶¶ 95-125. By their Complaint, Plaintiffs seek declaratory and injunctive relief to allegedly protect Plaintiffs and their members and supporters from any irreparable harm caused by Defendants "[allegedly] directing States to remove registered voters from their rolls, to withhold their ballots, or to segregate or refuse to count the ballots they have cast" and "from continuing to [allegedly] threaten state and local election officials." Compl. ¶ 7.

On October 23, 2026, Plaintiffs filed their Motion for Expedited Discovery – a week and a half before the November 3, 2026 General Election. *See* Plaintiffs' Mot. for Expedited Disc., ECF No. 16 ("Pl. Mot."). Plaintiffs seek "limited discovery" conducted "on an expedited basis in this time-sensitive election-related matter" for the purposes of "seriously contemplating a request for emergency relief on the claims alleged in their complaint." Pl. Mot. at 1. Plaintiffs want to "ascertain whether, where, and in what manner Defendants are currently pursuing and plan to imminently pursue this unlawful pattern" of allegedly "meddling in state election administration." *Id.* at 3-4. As they state in their Complaint, Plaintiffs believe that "DOJ and DHS officials" have allegedly "demand[ed] that States purge their voter rolls based on shoddily-compiled target lists" and "threaten[ed] and intimidate[ed] state election officials for aiding voters." *Id.* at 3.

Plaintiffs propose that the government respond to two requests for production of documents and two interrogatories. *Id.* at 4-5. The requests state as follows:

> **Request For Production No. 1:** All non-privileged communications issued by Defendants since July 1, 2026, to state or local election officials demanding or requesting that they (i) remove specific registered voters from their statewide voter registration lists; (ii) refuse to issue ballots to specific registered voters; or (iii) segregate, or otherwise not count and tabulate, any ballots returned by specific registered voters for the upcoming November 3, 2026 General Election, as well as any responses to such communications.

> **Request For Production No. 2:** All non-privileged communications issued by Defendants since July 1, 2026, to state or local election officials that reference criminal prosecution, investigation, or any other form of legal action against state or local election officials in relation to their public duties for the upcoming November 3, 2026 General Election, along with any responses to such communications.
>
> **Interrogatory No. 1:** Identify all States where Defendants have sent state or local election officials communications demanding or requesting that they (i) remove specific registered voters from their statewide voter registration lists; (ii) refuse to issue ballots to specific registered voters; or (iii) segregate, or otherwise not count and tabulate, any ballots returned by specific registered voters for the upcoming November 3, 2026 General Election.
>
> **Interrogatory No. 2:** Identify any States where Defendants intend to send state or local election officials communications demanding or requesting that they (i) remove specific registered voters from their statewide voter registration lists; (ii) refuse to issue ballots to specific registered voters; or (iii) segregate, or otherwise not count and tabulate, any ballots returned by specific registered voters for the upcoming November 3, 2026 General Election.

*Id.*

On the morning of October 26, 2026, the parties attended a scheduling conference before Judge Boasberg. Min. Order, Oct. 23, 2026. At the conference, when the Court asked Plaintiffs' counsel if they could file a tentative motion for a preliminary injunction ("PI") and temporary restraining order ("TRO") without discovery, Plaintiffs' counsel answered in the affirmative.[1] Plaintiffs' counsel explained they would do so in order to ensure relief and protect the Plaintiffs' interests. Further, when the Court pointed out to Plaintiffs' counsel that any preliminary relief, such as an injunction, could only be for future acts by the government, not past acts, Plaintiffs' counsel agreed. Plaintiffs then explained that, the need for expedited discovery was based only

[1] Defendants ordered a transcript of the hearing, immediately following the hearing on October 26, 2026. As of the date of this filing, October 27, 2026, Defendants do not yet have a copy of the transcript and note that any inaccuracies may be resolved by the transcript itself.

to "help narrow the issues a little bit."

The Court set a hearing for Thursday, October 29, 2026, for Plaintiffs' Motion for Expedited Discovery. Min. Order, Oct. 26, 2026. The Court ordered the government to file its opposition by October 27, 2026 at 2 p.m. and for Plaintiffs to file any reply by noon on October 28, 2026. *Id.*

Then, late in the night on October 26, 2026, Plaintiffs filed a 278-page Motion for Temporary Restraining Order and Preliminary Injunction, including 41 exhibits, totaling 272 pages ("TRO/PI Mot."), ECF No. 19. The 41 exhibits appear to be news clippings or correspondence between federal, state, and local officials – as recent as October 26, 2026, the date the TRO/PI Motion was filed. *Id.*

The TRO/PI Motion specifically requests that the Court enter a nationwide injunction against the Department of Justice, Attorney Todd Blanche, the Department of Homeland Security, and Homeland Security Secretary Markwayne Mullin, and their "agents, employees, and their persons in active concert and participation," from "requesting or demanding that any state or local election official (i) remove specific registered voters from their statewide voter registration lists; (ii) refuse to issue ballots to specific registered voters; or (iii) segregate, or otherwise not count and tabulate, any ballots returned by specific registered voters" for the November 3, 2026 General Election or "from threatening election officials with criminal penalty or investigation for failure to comply with such demands." TRO/PI Mot., Proposed TRO, ECF No. 19-9 at 2. The Government will brief its opposition to this motion in accord with any scheduling order that the Court enters.

## <u>LEGAL STANDARD</u>

### I. Subject Matter Jurisdiction

Federal district courts, as courts of limited jurisdiction, "possess only that power conferred by [Article III of the] Constitution and [by] statute." *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 152 (D.D.C. 2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "There is a presumption against federal court jurisdiction and the burden is on the party asserting the jurisdiction, the plaintiff[s] in this case, to establish that the Court has subject matter jurisdiction over the action." *Id.* at 153 (internal citation omitted); *see also Mich. Welfare Rts. Org. v. Trump*, 600 F. Supp. 3d 85, 96 (D.D.C. 2022) (discussing subject matter jurisdiction in Voting Rights Act case).

The requirement that plaintiffs establish standing in their case "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560-61). The standing inquiry is the same for individuals and for organizations. That is, "organizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024) (internal citation omitted).

## II. Federal Rule of Civil Procedure 26(d)

Under Rule 26(d)(1) of the Federal Rules of Civil Procedure, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).

"[E]xpedited discovery is not the norm." *Guttenberg v. Emery*, 26 F.Supp.3d 88, 97 (D.D.C. 2014).

Indeed, the Supreme Court has recently emphasized that discovery follows the resolution of a Rule 12 motion. *Hikma Pharms. USA Inc.*, 608 U.S. at 589. In this district, Local Civil Rule 26.2(a), proscribes a specific order for discovery: except "when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any sources before the parties have conferred as required by Fed. R. Civ. P. 26(f)." LCvR 26.2(a).

Courts in this district assess motions for expedited discovery under a "reasonableness" standard. *Guttenberg*, 26 F.Supp.3d at 97 (expedited discovery was not warranted). *See also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 103 (D.D.C. 2018) (denying motion for expedited discovery). When assessing a motion for expedited discovery, the Court will consider the following five factors:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

*Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (quoting *Guttenberg*, 26 F.Supp.3d at 98). Expedited discovery is reserved for exceptional circumstances. *Id.* at 161.

## ARGUMENT

### I. Plaintiffs Lack Standing and, Therefore, Are Not Entitled to Any Relief.

The requirement that plaintiffs establish standing in their case "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely

caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560-61). An injury in fact must be "(1) concrete, (2) particularized, and (3) actual or imminent." *Id.* (quoting *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1292 (D.C. Cir. 2007)). "An actual or imminent injury is 'certainly impending and immediate – not remote, speculative, conjectural, or hypothetical.'" *Id.* (quoting *Public Citizen*, 489 F.3d at 1293).

Such self-imposed harm cannot create an Article III case or controversy.

Plaintiffs are unlikely to establish standing and, even if they could, the expedited discovery that Plaintiffs seek would not assist this Court's standing inquiry. Defendants request that the Court deny Plaintiffs' Motion as premature because the government has not yet briefed the Court on subject matter jurisdiction over Plaintiffs' claims. The government intends to more fully brief the Court on these arguments in its opposition to Plaintiffs' TRO/PI Motion. But even at this stage, serious jurisdictional problems are apparent. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Plaintiffs challenge letters from the federal government identifying suspected ineligible voters (*i.e.*, those voters who are not U.S. citizens, as federal law requires), and asking that any votes from those suspected ineligible voters be temporarily segregated so that the state and localities can ultimately determine if the suspected ineligible voters are in fact eligible make the qualification decision. The letters do not have independent legal effect, and, in any event, an injunction cannot remedy past harm. And any concrete and particularized injury to Plaintiffs this requires a "speculative chain of possibilities." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 410

(2013). Even if Defendants send similar letters to new jurisdictions, those third-party jurisdictions would have to independently take action based on those letters—*i.e.*, actually segregate votes. The votes would have to be from eligible voters. After all, the letter itself does not segregate ballots (or effectuate any other actions Plaintiffs want the Court to enjoin). But "[w]hen a plaintiff's asserted injury arises from the Government's regulation of a third party that is not before the court, it becomes 'substantially more difficult' to establish standing." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004). Yet Plaintiffs have not plausibly alleged—and they certainly haven't made a strong showing—that third parties will behave in this. Rather, these, jurisdictions have been contesting these letters—as proceedings in the Ninth Circuit and Central District of California illustrate. Even there, because these letters are the subject of collateral litigation, a court would likely need to order the states to segregate the ballots, thus providing a double-layer of third-party interactions that breaks the chain of causation. This Court cannot enjoin sibling (or parent) federal courts, and yet that is ultimately the act that Plaintiffs complain about, since that seems to be the only act that will require third-party jurisdictions to enforce the letters. Similarly, while Plaintiffs rely on *Bost v. Illinois State Bd. of Elections*, 607 U.S. 71, 82 (2026) for the claim that "[c]andidates have a concrete and particularized interest in the rules that govern the counting of votes in their elections," here, determinations of voter eligibility would be made by states and localities who are not present in this suit. The government's letters in and out of themselves are not voting rules; thus *Bost* does not unlock standing.

To the extent that Plaintiffs are worried about their potential voters needing to spend time and resources gathering information to prove their citizenship, or being less likely to vote, any such action is speculative because the *effect* of those letters is speculative. Finally, to the extent

that Plaintiffs complain about any infringement on their organizational interests requiring them to respond, under these circumstances, that would be a self-inflicted injury. *All. for Hippocratic Med.*, 602 U.S. at 394 ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to [counteract that action]").

## II. Plaintiffs' Request for Expedited Discovery is Unnecessary and Unwarranted.

Plaintiffs cannot justify their request for expedited discovery in this case, especially in light of the fact that they just filed their TRO/PI Motion without first engaging in discovery. In determining whether Plaintiffs' request should be granted or denied, the Court assesses Plaintiffs' motion under five-factor reasonableness standard articulated in *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014). Under this approach, the Court examines "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* at 98. Here, these factors weigh heavily against granting Plaintiff's motion.

### A. <u>There is a Pending TRO/PI Motion, But Plaintiffs' Counsel Admitted That Expedited Discovery Was Not Needed to File the TRO/PI Motion.</u>

Ordinarily, when there is a motion for a preliminary injunction pending before the Court, the first factor weighs in the plaintiff's favor. *Id.* at 97; *see also Does 1-9 v. Dep't of Justice*, No. 25-cv-0328 (JMC), 2025 WL 894120, at *8 (Mar. 22, 2026). However, at the October 26, 2026, scheduling conference, Plaintiffs' counsel conceded that Plaintiffs could file their TRO/PI Motion without discovery to ensure relief and protect Plaintiffs' interests. And Plaintiffs did just that – file their TRO/PI Motion while the subject expedited discovery motion was pending. Their

TRO/PI Motion includes seven declarations, one of which attached over 41 exhibits that had recent news clippings and correspondence regarding the factual allegations in Plaintiffs' TRO/PI Motion. *See* TRO/PI Mot., Exhibits 1-7, ECF Nos. 19-2 through 19-8. In other words, Plaintiffs' counsel knew at the October 26, 2026 scheduling conference that Plaintiffs were no longer "contemplating a request for emergency relief" (Pl. Mot. at 1) as they already had what they needed to proceed with their motion, which they filed later the same day. Therefore, the first factor weighs in favor of the Court denying Plaintiffs' motion. *Cf. NAACP v. U.S. Dep't of Homeland Sec.*, Order Granting in Part and Denying in Part Expedited Discovery, No. 1:26-cv-3263-LLA, at *4 (D.D.C. Oct. 21, 2026) (concluding that the first factor "weigh[ed] slightly in Plaintiffs' favor" for expedited discovery where no request for emergency relief was pending because expedited discovery can "support [the plaintiff's] anticipated motion for a preliminary injunction") (citation omitted).

Similarly, the third factor – the purpose of Plaintiffs' motion for expedited discovery – weighs in favor of denying Plaintiffs' motion because Plaintiffs' stated purpose has since changed. The Court must assess the stated purpose of the plaintiffs' motion, which includes an examination for urgency in seeking expedited discovery. *Guttenberg*, 26 F. Supp. 3d at 98. A demonstrated lack of urgency "weighs against granting expedited discovery." *Attkisson*, 113 F. Supp. 3d at 164. (citing *Guttenberg*, 26 F. Supp. 3d at 98). Here, Plaintiffs initially sought expedited discovery to ascertain "whether, where, and in what manner Defendants are currently pursuing and plan to imminently pursue" alleged election interference. Pl. Mot. at 4. At the October 26, 2026 scheduling conference, Plaintiffs' counsel admitted that, at this point, expedited discovery will help "narrow the issues a little bit." Now that Plaintiffs have filed their TRO/PI Motion, it is clear that the stated purpose for their request for expedited discovery has changed because the relief

Plaintiffs seek in their recently-filed TRO/PI Motion is nationwide relief and not state-specific. *See* TRO/PI Mot., Proposed TRO, ECF No. 19-9 at 2. Setting to one side whether Plaintiffs are entitled to relief – and they are not – by Plaintiffs' own assessment, no discovery is necessary to support their TRO/PI motion. *Cf.* LCvR 65.1(c) ("[A]pplication shall be supported by all affidavits on which the plaintiffs to rely.") Therefore, the Court should find that the third factor does not weigh in Plaintiffs' favor.

B. <u>Plaintiffs' Proposed Requests Are Not Narrowly Tailored to the TRO/PI Motion.</u>

As to the second factor – breadth of discovery requests – the Court examines the proposed requests to determine whether they are "limited in scope to requesting specific records of information" or if the requests actually "seek[] to prove an element of the plaintiffs' case." *Attkisson*, 113 F. Supp. 3d at 162-63 (citing *Guttenberg*, 26 F.Supp.3d at 98). Expedited discovery that is not narrowly tailored to a key issue, for example, to "establish irreparable harm as required for early injunctive relief," is merits discovery that the Court generally prohibits. *Does 1-9*, 2025 WL 894120, at *8; *see also Attkisson*, 113 F. Supp. 3d at 164.

Here, after Plaintiffs filed their TRO/PI Motion – which seeks a nationwide injunction – their proposed discovery requests are no longer relevant to "ascertain whether, where, and in what manner Defendants are currently pursuing and plan to imminently" pursue the challenged actions. Pl. Mot. at 4. For example, Plaintiffs' proposed Request for Production No. 1 seeks "[a]ll non-privileged communications issued by Defendants since July 1, 2026, to state or local election officials, demanding or requesting that they" remove specific voters from registration lists, refuse to issue ballots to registered voters, or segregate or not count ballots by specific registered voters (Pl. Mot. at 4). However, the Court cannot order any injunctive relief as to conduct that was allegedly performed in the past. The only relief that the Court could order would concern future

conduct – which Request for Production No. 1 is not narrowly tailored to. *Id.* at 4. Proposed Request for Production No. 2 and Interrogatory No. 1 fare no better. *Id.* at 4-5. Proposed Interrogatory No. 2 is tailored to future conduct, *i.e.*, "States where Defendants intend to send state or local election officials communication," but this request seeks information that is objectionable because it, by definition, does not include any actual communications, but merely the possibility of such communications (after all, an "intent" can change up to the moment a communication is mailed). Such requests are thus definitionally deliberative and likely covered by the law enforcement privilege as well, to the extent they would reveal investigative techniques and ongoing activities (i.e., ongoing analysis of potential improper voters). *Id.* at 5. Thus, the Court should find that the second factor weighs against granting Plaintiffs' motion.

As to the fifth factor, the type of discovery that Plaintiffs seek – merits discovery – is premature. The Court will evaluate "how long before the normal discovery process the motion [for expedited discovery] comes." *Attkisson*, 113 F. Supp. 3d at 165. Here, Plaintiffs' motion was filed three days after they filed their Complaint – which was less than two weeks before the November 3, 2026 General Election. The short timeline of Plaintiffs' demand is of their own making. As such, the fifth factor should support denying Plaintiffs' motion.

C. <u>The Burden on the Government is Very High.</u>

When the last factor – burden – is "low, such as responding to only one or a few discovery requests, then this factor supports granting the motion for expedited discovery." *Attkisson*, 113 F. Supp. 3d at 165 (citation omitted). In Plaintiffs' motion, they state that the burden on the government is "minimal . . . because [Plaintiffs] seek narrow and discrete sets of communications that Defendants are likely to have ready at hand and which should be modest in volume, as the California case shows." Pl. Mot. at 8. That is not an accurate portrayal of Plaintiffs' discovery

requests or the burden on the government.

First, Plaintiffs' Request for Production 1 demands "All non-privileged communications issued by Defendants since July 1, 2026, to state or local election officials demanding or requesting" three disjunctive factors, including all responses. To the extent Plaintiffs seek letters comparable to the *California* litigation, this may be a "narrow and discrete" set of communications (though gathering *responses* to those—which were sent by individual U.S. Attorneys' Offices—would still be burdensome and of unclear relevance). But to the extent Plaintiffs seek custodial searches, that would be on its face impractical and unduly burdensome given the timing. Request for Production 2 similarly demands any letter from federal to state or local officials referencing "investigations" into the General Election. On its face this request is far too burdensome—the federal government has long had a statutory role in investigating election law violations, and requiring this information to be disclosed would be both impractical in the time before the election, unduly burdensome, and not at all relevant to the actual claim. To the extent that this Court grants any relief to Plaintiffs, it should be clear that Request for Production 1 and 2 are limited only to letters comparable in form to those sent to the California counties; rather than authorizing a broad custodial search days before an election.

Plaintiffs' requests are even more problematic as they apply to future communications (Interrogatory No. 2). Future communications are not "ready at hand" as they do not yet exist. If, however, Plaintiffs' discovery requests were revised to request a rolling production, for example, of future communications by Defendants to state and local officials and were responsive to Plaintiffs' Requests for Production Nos. 1 and 2, the burden on the Defendants to carbon copy or "cc" every communication to Plaintiffs would be high. Moreover, releasing the names of jurisdictions where the government "intend[s]" to send such letters is inconsistent with Plaintiffs

theory of the case, and risks causing confusion. An "intent" is not final until it is effectuated. But releasing a list of potential jurisdictions before any letter is sent requires disclosure of deliberative process and law enforcement sensitive information. And it risks significant public confusion if the government is forced to prematurely release contemplated names of jurisdictions where it is identifying problems. "[T]he D.C. Circuit has long recognized that the risk of public confusion 'has a special force with respect to disclosures of agency positions or reasoning concerning proposed policies.'" *Pub. Emps. for Env't Resp. v. Dep't of Homeland Sec.*, 575 F. Supp. 3d 34, 52 (D.D.C. 2021) (quoting *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1436 n.10 (D.C. Cir. 1992)).

Therefore, this factor weighs in favor of denying Plaintiffs' motion. At a minimum, any discovery must be limited to only *released* letters comparable to those in the *California* litigation, and this Court should reject any broader construction. Further, any order should limit production to a practical production schedule that requires production of only final, non-privileged communications and exclude information concerning contemplated or future communications.

**CONCLUSION**

WHEREFORE, Defendants respectfully request that the Court deny Plaintiffs' Motion for Expedited Discovery (ECF No. 16).

Dated: October 27, 2026
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Catherine J. Malycke*
CATHERINE J. MALYCKE
VA Bar No. 84952
Assistant United States Attorney
Civil Division
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 809-3495
Catherine.Malycke@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DSCC, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*. | Civ. A. No. 26-3674 (JEB) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' opposition to Plaintiffs' Motion for Expedited Discovery (ECF No. 16), arguments articulated at the hearing on October 29, 2026, and the entire record herein, it is hereby

ORDERED that Plaintiffs' Motion for Expedited Discovery is DENIED.

SO ORDERED:

________________________
DATED

________________________
JAMES E. BOASBERG
United States District Judge