**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, et al.,<br><br>Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | Case No. 1:26-cv-03674-JEB |

# PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................3

I. Plaintiffs have standing to challenge Defendants' unlawful meddling in the electoral process, as recent Supreme Court and D.C. Circuit decisions confirm. ........... 3

II. Expedited discovery remains warranted to permit both Plaintiffs and the Court to assess the scope of Defendants' misconduct. ........................................................... 6

A. Factor 1: The pendency of Plaintiffs' motion for preliminary relief supports their request for expedited discovery. .................................................. 7

B. Factors 2 and 3: The requested discovery is narrow and tethered to the requested preliminary relief. ................................................................. 11

C. Factors 4 and 5: The requested discovery imposes minimal burden on Defendants and is appropriate given the litigation posture............................... 14

CONCLUSION..........................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bost v. Ill. Bd. of Elections*,
607 U.S. 71 (2026) .......... 1, 3, 4

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) .......... 13

*Abtew v. U.S. Dep't of Homeland Sec.*,
808 F.3d 895 (D.C. Cir. 2015) .......... 13

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*,
No. 18-CV-01388 (TSC), 2019 WL 9598404 (D.D.C. Jan. 30, 2019) .......... 7, 8

*AFL-CIO v. Dep't of Lab.*,
349 F.R.D. 243 (D.D.C. 2025) .......... 15

*All. for Retired Ams. v. Bessent*,
No. CV 25-0313 (CKK), 2025 WL 1114350 (D.D.C. Mar. 20, 2025) .......... 13

*Attkisson v. Holder*,
113 F. Supp. 3d 156 (D.D.C. 2015) .......... 7, 14, 15

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) .......... 3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*CFTC v. Hunt*,
591 F.2d 1211 (7th Cir. 1979) .......... 12

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
826 F. Supp. 3d 73 (D.D.C. 2026) .......... 16

*Ctr. for Taxpayer Rts. v. Internal Revenue Serv.*,
No. 26-5006, 2026 WL 2635380 (D.C. Cir. Sep. 8, 2026) .......... 4

*Damus v. Nielsen*,
328 F.R.D. 1 (D.D.C. 2018) .......... 13

*Dep't of Homeland Sec. v. League of Women Voters*,
No. 26A308, 2026 WL 2879700 (U.S. Sep. 25, 2026) .......... 4, 5

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025) .......... 5

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
234 F.R.D. 4 (D.D.C. 2006) .......... 8

*District of Columbia v. Trump*,
No. 25-CV-3005 (JMC), 2025 WL 4083335 (D.D.C. Sep. 19, 2025) .......... 7, 8

*Does 1-9 v. Dep't of Just.*,
No. 25-CV-325 (JMC), 2025 WL 894120 (D.D.C. Mar. 22, 2025) .......... 3, 7, 15

*DSCC v. Trump*,
No. 26-CV-01114 (CJN), 2026 WL 2681471 (D.D.C. Sep. 13, 2026) .......... 4, 5, 10

*Edmond v. U.S. Postal Serv. Gen. Couns.*,
949 F.2d 415 (D.C. Cir. 1991) .......... 3

*Ellsworth Assocs., Inc. v. United States*,
917 F. Supp. 841 (D.D.C. 1996) .......... 7, 13

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 5

*Guttenberg v. Emery*,
26 F. Supp. 3d 88 (D.D.C. 2014) .......... 6, 8, 10, 14

*Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026) .......... 6

*Hosp. Staffing Sols., LLC v. Reyes*,
736 F. Supp. 2d 192 (D.D.C. 2010) .......... 8, 12

*In re Fannie Mae Derivative Litig.*,
227 F.R.D. 142 (D.D.C. 2005) .......... 14

*In re Sealed Case*,
856 F.2d 268 (D.C. Cir. 1988) .......... 12

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
No. CIV.A. 11-465-LPS, 2011 WL 4478477 (D. Del. Sep. 26, 2011) .......... 9

*KPM Analytics N. Am. v. Blue Sun Sci., LLC*,
540 F. Supp. 3d 145 (D. Mass. 2021) .......... 9

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
No. 26-5243, 2026 WL 2643439 (D.C. Cir. Sep. 4, 2026) .......... 5, 6

*Legal Tech. Grp., Inc. v. Mukerji*,
No. 17-cv-631, 2017 WL 7279398 (D.D.C. June 5, 2017) .......... 8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 3

*NAACP v. DHS*,
No. 26-cv-3263 (LLA), 2026 WL 3173472 (D.D.C. Oct. 21, 2026) .......... 16

*New Mexico v. Musk*,
770 F. Supp. 3d 192 (D.D.C. 2025) .......... 7, 9, 12, 13, 16

*O'Shea v. Littleton*,
414 U.S. 488 (1974) .......... 12

*Strike 3 Holdings, LLC v. Doe*,
964 F.3d 1203 (D.C. Cir. 2020) .......... 1, 3, 6

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 10

*U.S. Dep't of Just. v. Daniel Chapter One*,
89 F. Supp. 3d 132 (D.D.C. 2015) .......... 12

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
592 U.S. 261 (2021) .......... 13, 15

*Venetian Casino Resort, L.L.C. v. EEOC*,
409 F.3d 359 (D.C. Cir. 2005) .......... 13

*Vote Forward v. DeJoy*,
No. 20-CV-2405 (EGS), 2021 WL 1978805 (D.D.C. May 18, 2021) .......... 11

*Washington v. Trump*,
145 F.4th 1013 (9th Cir. 2025) .......... 10

**RULES**

Fed. R. Civ. P. 12 .......... 16

Fed. R. Civ. P. 26 .......... 2, 6, 7

Fed. R. Civ. P. 33 .......... 12

## INTRODUCTION

With election day just six days away, Defendants continue to assert power they do not have to demand that state and local election officials purge voters and withhold or segregate ballots, or else face criminal prosecution. Indeed, since the filing of the Complaint, Defendants have announced that yet more States will be targeted—both before election day and in the certification period that follows—yet refuse to say which. Plaintiffs' narrow, targeted discovery requests seek the barest amount of information necessary to shed light on Defendants' shadow effort to micromanage state election administration: two requests for production and two interrogatories, limited to communications since July 1, 2026, aimed at learning whether, where, and how Defendants have intruded and where they intend to intrude next.

Defendants' response, *see* ECF No. 23 ("Opp."), offers no good reason to deny those requests. They advance two principal objections. First, they contend that Plaintiffs lack standing and that any discovery should await the Court's resolution of that question. But the D.C. Circuit has been clear that the "mere possibility" that a defendant "may defeat a complaint at a later stage is not a legitimate basis to deny a" motion for expedited discovery. *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1211 (D.C. Cir. 2020). In any event, Plaintiffs' standing could hardly be clearer in view of recent Supreme Court and D.C. Circuit precedent. The Supreme Court's recent decision in *Bost v. Illinois State Board of Elections* held that "candidates suffer when the [electoral] process departs from the law." 607 U.S. 71, 77 (2026). Plaintiffs here represent candidates engaged in electoral contests across the country, and they have plausibly alleged—and, through their motion for preliminary relief, now shown—that Defendants are unlawfully intruding upon state election procedures. *See* Mem. in Supp. of Mot. for TRO & Prelim. Inj. at 32–38, ECF No. 19-1 ("Motion for TRO/PI"). Accordingly, *Bost*—and several other

independently sufficient standing grounds—refute Defendants' effort to use standing as a hurdle to expedited discovery.

Second, Defendants insist that, because Plaintiffs have now moved for emergency relief, discovery is no longer needed. That gets the analysis backwards. Both this District's precedent and the Federal Rules identify cases "involving requests for a preliminary injunction" as the most "appropriate" cases for expedited discovery. Fed. R. Civ. P. 26(d) advisory committee's note to 1993 amendment. Plaintiffs' pending motion only strengthens the case for targeted discovery that will sharpen the record and, potentially, define the contours of any relief. That is particularly so since, after issuing any temporary restraining order, the Court may wish to refine or further buttress its chosen remedy when considering entry of a longer-lasting preliminary injunction. Defendants cannot fault Plaintiffs for seeking a nationwide injunction—relief warranted by Defendants' expanding campaign of misconduct—while also withholding the very information that would allow for a more tailored remedy. The fact that the requested discovery will only *strengthen* an already meritorious request for preliminary relief is also no reason to deny such discovery. To the contrary, courts often grant discovery requests that bolster pending and meritorious requests for preliminary relief.

The remaining "reasonableness" factors all cut in Plaintiffs' favor, too. Defendants do not dispute that the core category of responsive documents sought is "narrow and discrete." Opp. at 13. Their privilege objections are generic and premature. And, absent expedited discovery, any information would arrive only after the election and completion of certification, when it likely could no longer inform relief. The Court should therefore grant the motion and order that Defendants complete production immediately.

## ARGUMENT

### I. Plaintiffs have standing to challenge Defendants' unlawful meddling in the electoral process, as recent Supreme Court and D.C. Circuit decisions confirm.

For the present motion, the Court looks at standing by "accept[ing] the complaint's well-pleaded allegations as true" and "draw[ing] all reasonable inferences from those allegations in the plaintiff's favor." *Strike 3 Holdings*, 964 F.3d at 1211 (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)). After doing so, a possible deficiency in standing counsels against discovery only "if a plaintiff plainly has no 'realistic chance of successfully suing' the defendant." *Id.* (citation omitted). "[T]he mere possibility that an unnamed defendant may defeat a complaint at a later stage is not a legitimate basis to deny a Rule 26(d)(1) motion that otherwise satisfies Rule 26's discovery standards." *Id.* Indeed, to the extent a discovery motion bears upon facts implicating jurisdiction, "'it is an abuse of discretion to deny jurisdictional discovery' in light of allegations suggesting jurisdiction." *Does 1-9 v. Dep't of Just.*, No. 25-CV-325 (JMC), 2025 WL 894120, at *4 (D.D.C. Mar. 22, 2025) (quoting *Edmond v. U.S. Postal Serv. Gen. Couns.*, 949 F.2d 415, 425 (D.C. Cir. 1991)). In short, there is no basis to deny discovery simply because Defendants plan to raise purported jurisdictional deficiencies in a forthcoming "opposition to Plaintiffs' TRO/PI Motion." Opp. at 7.

Regardless, Plaintiffs clearly satisfy Article III. They are injured-in-fact by Defendants' electoral interference in at least four different ways, all of which are traceable to Defendants and likely to be redressed by an injunction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

First, Plaintiffs are suffering the exact injury described in *Bost*: they "have an interest in a fair process," and "suffer [a cognizable harm] when the process departs from the law." 607 U.S. at 77. *Bost* was about the process for determining *which* ballots would be counted, *id.*; so is this case, where Defendants demand ballots be segregated and not tabulated, Compl. ¶¶ 75–79.

Even so, "*Bost*'s reasoning was not limited only to that context . . . candidates can suffer different injuries related to their interest in 'a fair [electoral] process'—such as by losing an election, requiring the expenditure of additional resources, or decreasing the vote share and damaging the candidate's reputation." *DSCC v. Trump*, No. 26-CV-01114 (CJN), 2026 WL 2681471, at *5 (D.D.C. Sep. 13, 2026) (second alteration in original) (quoting *Bost*, 607 U.S. at 77). Accordingly, *Bost* applies to "challenges to aspects of the electoral process beyond just vote counting." *Id.* Likewise, Plaintiffs are injured regardless of whether the challenged aspects of the process—here, Defendants' efforts to unlawfully interfere with state election procedures—"help, hurt, or have no effect on a candidate's electoral prospects." *Bost*, 607 U.S. at 77. To put a point on it, because Plaintiffs allege that Defendants are exceeding federal authority and improperly intruding into state election administration, Plaintiffs have standing to restore their "opportunity to compete for election under the Constitution and laws of the United States." *Id.* at 79. *Bost* therefore makes clear that at least the organizations and candidates have satisfied their burden to adequately allege standing.

Plaintiffs are not only denied a fair electoral process; Defendants' unlawful election interference will also impair Plaintiffs' electoral prospects, interfere with Plaintiffs' core activities, and deny Plaintiffs' members and constituents the right to vote. *See* Motion for TRO/PI at 33–35. In short, when state and local election officials predictably acquiesce to Defendants' pressure campaign, voters will be burdened or even disenfranchised; that hurts those voters, and it undermines Plaintiffs' efforts to mobilize supporters and win elections. *See, e.g.*, *Dep't of Homeland Sec. v. League of Women Voters*, No. 26A308, 2026 WL 2879700, at *2 (U.S. Sep. 25, 2026) (per curiam) (holding voters had standing when they "need[ed] to take . . . affirmative steps to avoid risk of harm" to right to vote (second alteration in original)); *Ctr. for*

*Taxpayer Rts. v. Internal Revenue Serv.*, No. 26-5006, 2026 WL 2635380, at *5 (D.C. Cir. Sep. 8, 2026) (holding organization had standing when government action "'directly affect[ed] and interfere[d] with' an organization's 'core business activities'"); *DSCC*, 2026 WL 2681471, at *5 (holding that "candidates currently running for office likely have competitor standing" where federal government intrudes upon state election procedures).

In response, Defendants challenge Plaintiffs' standing on the theory that the letters to election officials demanding the removal of purported ineligible voters "do not have independent legal effect" because a "letter itself does not segregate ballots." Opp. at 7–8. This attempt to pass the buck has already been rejected by the D.C. Circuit and the Supreme Court. "[A]n injury remains fairly traceable to federal action when third parties 'will likely react' to it 'in predictable ways.'" *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 26-5243, 2026 WL 2643439, at *5 (D.C. Cir. Sep. 4, 2026) (quoting *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025)); *see also Dep't of Homeland Security*, 2026 WL 2879700 (holding that voter had standing to challenge federal action when she "likely" would have suffered injury from a State); *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). Here, it is predictable that election officials will accede to the federal government's demands and threats—and take action based on spurious federal lists of non-citizens.

Defendants *demand* that election officials yield to their commands at breakneck speed, backed by rapid-fire litigation tactics and threats of criminal prosecution for anyone who dares to say no. *See, e.g.*, ECF No. 19-2, Ex. Z (instructing California to "take all immediate and reasonable steps to not provide a ballot" to specified individuals and to "ensure that the process described" is "implemented . . . by October 15 at noon EST"); Ex. AB (same as to Los Angeles County); Ex. AM (setting "expectations" for Washington to comply with and requiring that

Washington "ensure" specific actions are "implemented by . . . October 28 at noon PST" or face "emergency relief"). Soeven assuming that state and local election officials are ultimately those who move to disenfranchise voters—an assumption increasingly called into doubt by DOJ's constant escalation tactics—"the intervening role of state officials does not defeat causation." *League of Women Voters*, 2026 WL 2643439, at *5. Plaintiffs' injuries are "fairly traceable and redressable" because enjoining Defendants' interference campaign "removes the federal response that sets the process in motion." *Id.* (holding that plaintiffs had standing to challenge asserted voter injury from federal program).

Finally, as the Proposed Order accompanying Plaintiffs' Motion for TRO/PI makes clear, the remedy Plaintiffs seek will not require this Court to intrude upon parallel litigation. *Contra* Opp. at 8. Rather, Plaintiffs seek relief that will prohibit Defendants from making their shakedown demands to state and local election officials in the first instance, well before any subsequent enforcement action can even be filed.

## II. Expedited discovery remains warranted to permit both Plaintiffs and the Court to assess the scope of Defendants' misconduct.

On the merits, Defendants agree that Plaintiffs' request is governed by the five "reasonableness" factors set forth in *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014).[1] Unable to persuasively contest these factors, Defendants pin their argument chiefly on the

[1] For this reason, Defendants' passing reliance (at 6) on *Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026), is misplaced. That decision stands only for the unremarkable proposition that discovery is not available to a party that fails to state a plausible claim. *See id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It says nothing about the district court's discretion to sequence discovery, particularly when there are disputes over subject matter jurisdiction or preliminary relief. *Id.* Indeed, the Federal Rules contemplate just such early discovery. *See* Fed. R. Civ. P. 26(d)(1); *see also Strike 3 Holdings*, 964 F.3d at 1211 ("[T]he mere possibility that [a] defendant may defeat a complaint at a later stage is not a legitimate basis to deny a Rule 26(d)(1) motion that otherwise satisfies Rule 26's discovery standards."); *Guttenberg*, 26 F. Supp. 3d at 98 (noting "the Court's broad discretion in handling discovery," including as to expedited discovery).

assertion that Plaintiffs' intervening request for emergency relief thwarts their discovery motion—a puzzling assertion that runs headlong into the Federal Rules' own admonition that expedited discovery is most likely to be "appropriate" in cases "involving requests for a preliminary injunction or motions challenging personal jurisdiction." Fed. R. Civ. P. 26(d), advisory committee's note to 1993 amendment. In reality, Plaintiffs' motion for preliminary relief buttresses the case for expedited discovery that can help the Court craft appropriate preliminary relief. Because the other reasonableness factors are satisfied as well, the Court should grant the motion.

**A. Factor 1: The pendency of Plaintiffs' motion for preliminary relief supports their request for expedited discovery.**

This District's case law is clear that the pendency of a motion for preliminary relief—or the prospect of imminently filing one—*supports* a request for expedited discovery. *See, e.g.*, *New Mexico v. Musk*, 770 F. Supp. 3d 192, 198 (D.D.C. 2025) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." (quoting *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996)); *District of Columbia v. Trump*, No. 25-CV-3005 (JMC), 2025 WL 4083335, at *1 (D.D.C. Sep. 19, 2025) (expedited discovery most appropriate where it can aid "the Court's efficient resolution of Plaintiff's preliminary injunction motion"); *Does 1-9*, 2025 WL 894120, at *8 (the pendency of a motion for preliminary relief "weighs in Plaintiffs' favor" for expedited discovery); *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 9598404, at *2 (D.D.C. Jan. 30, 2019) ("Factor one is satisfied because Plaintiffs have filed a motion for preliminary injunction."); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 164 (D.D.C. 2015) ("[T]his factor supports a motion for expedited discovery when the plaintiff seeks to 'gain evidence to get the court to preserve

the status quo.'" (citation omitted)). Accordingly, while the first reasonableness factor already weighed in Plaintiffs' favor, *see Legal Tech. Grp., Inc. v. Mukerji*, No. 17-cv-631, 2017 WL 7279398, at *3 (D.D.C. June 5, 2017), the factor is now plainly "satisfied" outright, *Afghan & Iraqi Allies*, 2019 WL 9598404, at *2.

Even so, Defendants now insist that the filing of a preliminary injunction motion somehow *defeats* Plaintiffs' earlier request for expedited discovery. *See* Opp. 9–11. Their reasoning appears to be that, because Plaintiffs are sufficiently confident in their existing evidence to seek some form of emergency relief, the need for any expedited discovery has necessarily dissipated. *See id.* But that ignores that the purpose of expedited discovery is often to "flesh[] out a preliminary injunction motion," *Guttenberg*, 26 F. Supp. 3d at 97, and "to gain evidence to get the court to preserve the status quo," *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006). Such evidence will often "aid[]" the Court's resolution of a pending motion for emergency relief, *District of Columbia*, 2025 WL 4083335, at *1, even where the existing record is already sufficient. That can include with respect to determining the "nature and extent" of unlawful behavior, *Hosp. Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 201–02 (D.D.C. 2010), which is a critical question for determining the proper scope and duration of any preliminary relief.

That is *precisely* what Plaintiffs' proposed discovery seeks to uncover—the nature and extent of any existing or planned intrusions by Defendants into state election administration. *See* ECF No. 16, Exs. A, B; *see also* ECF No. 16 at 4 (explaining Plaintiffs sought to "ascertain whether, where, and in what manner Defendants" planned to further intrude upon the States). Such information stands to inform—and perhaps even narrow—the scope of any relief required from this Court, while also reinforcing Plaintiffs' existing evidence about the need for such

interlocutory relief to issue. Indeed, the existence of any communications responsive to Plaintiffs' requests for production would both bolster the case for preliminary relief—by further establishing that Defendants are engaged in an ongoing course of conduct to intrude upon state election administration—while also offering at least the prospect of a more tailored injunction. Such discovery could prove particularly useful if this Court grants a temporary restraining order but then seeks a greater factual record prior to entering a preliminary injunction. The fact that expedited discovery will reinforce and refine an already meritorious request for preliminary relief is no reason at all to deny such a request. *See, e.g.*, *Musk*, 770 F. Supp. 3d at 199 (noting discovery could "bolster" an already pending "injunctive relief request"); *Kone Corp. v. ThyssenKrupp USA, Inc.*, No. CIV.A. 11-465-LPS, 2011 WL 4478477, at *8 (D. Del. Sep. 26, 2011) (concluding expedited discovery could "help to clarify and elucidate issues" raised in pending preliminary injunction motion); *cf. KPM Analytics N. Am. v. Blue Sun Sci., LLC*, 540 F. Supp. 3d 145, 146 (D. Mass. 2021) (concluding where plaintiff had "demonstrated a reasonable likelihood of success on the merits" that "expedited discovery would provide a more fulsome record," including as to "design[ing] an equitable remedy").

Defendants' own potshots prove the point. They critique the now-pending motion for emergency relief as seeking "nationwide relief" that is "not state-specific." Opp. at 11. But the scope of the relief Plaintiffs seek is a necessary function of Defendants' own refusal to be candid about their own planned election meddling. Media reports have indicated that DOJ plans to act "against more states in the lead-up to—or possibly after—the Nov. 3 midterm elections." ECF No. 19-2, Ex. AH. Attorney General Blanche has confirmed that DOJ is "looking" at "a number of States" as next targets, but without saying which. *Id.*, Ex. B. Indeed, just yesterday—without

clear warning—DOJ commanded Washington State to purge its rolls and segregate ballots. *See id.*, Exs. AN, AO. Plaintiffs are left simply to speculate as to which State will be next.

Plaintiffs—who represent candidates competing in every State across the country, Snyder Decl. ¶¶ 3–4; Remmel Decl. ¶¶ 3–4; Edelman Decl. ¶¶ 3–4, Monroe-Moreno Decl. ¶¶ 3–4—should not be required to engage DOJ in a game of whack-a-mole on the eve of the election. In order to compete on fair and lawful terms in hundreds of electoral contests across the nation, Plaintiffs must know *whether* and *where* DOJ plans to make its unlawful demands that States and localities purge voters and sequester ballots. Snyder Decl. ¶¶ 8–9, 11; Remmel Decl. ¶¶ 9–10, 12; Edelman Decl. ¶¶ 9–10, 12, Monroe-Moreno Decl. ¶¶ 7–8, 10. If such information is not forthcoming, then nationwide relief is the *only* remedy that "will offer complete relief to the plaintiffs before the court." *Trump v. CASA, Inc.*, 606 U.S. 831, 850 (2025) (emphasis omitted). Indeed, Judge Nichols reached precisely that conclusion barely a month ago in a similar suit involving many of the same Plaintiff organizations. *See DSCC*, 2026 WL 2681471, at *11 (recognizing these "Plaintiff Organizations" have "members who are candidates in all fifty states," meaning nationwide relief was "a 'party-specific' remedy consistent with *CASA*'s command"). Simply put, DOJ's unlawful arrogation of authority to intrude upon state election administration at any time—paired with its stated intent to exercise that authority towards unspecified States—means it is presently "impossible [for Plaintiffs] to avoid this harm absent a uniform" nationwide injunction. *Washington v. Trump*, 145 F.4th 1013, 1039 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2809 (2026). The requested discovery, however, could "flesh[] out" whether a narrower or further refined injunction might afford complete relief, *Guttenberg*, 26 F. Supp. 3d at 97, while also reinforcing the facts supporting the issuance of interim relief in the first place.

Finally, there is no merit to Defendants' suggestion that Plaintiffs disclaimed the need for expedited discovery in support of their motion for preliminary relief at the October 26 status conference. As counsel made clear at the hearing, and as explained both above and in Plaintiffs' Motion for TRO/PI, the facts underpinning this case are evolving on a daily—and sometimes even hourly—basis. Once Attorney General Blanche *admitted* that DOJ intended to act against additional, unspecified States, Plaintiffs were left with little choice but to seek comprehensive relief at the earliest opportunity. *See* Motion for TRO/PI at 20–23. For the reasons set forth in the Motion for TRO/PI, this Court has ample basis for issuing that relief. But that in no way undercuts the fact that knowing "whether, where, and in what manner" Defendants are carrying out *ultra vires* action will help resolve the pending Motion for TRO. ECF No. 16 at 4.[2]

**B. Factors 2 and 3: The requested discovery is narrow and tethered to the requested preliminary relief.**

Plaintiffs' discovery requests are also appropriately tailored. For example, the two requests for production seek demands Defendants have already issued to target States—a discrete collection of communications that will reinforce the fact that Defendants have "arrogated to themselves an unprecedented—and unlawful—power to intrude into the most foundational aspects of state election administration," Motion for TRO/PI at 23, that is "backed by threats of 'significant federal scrutiny,'" *id.* at 28 (citation omitted). Similarly, the two interrogatories seek to discern the geographic scope of Defendants' *ultra vires* conduct, which goes to whether the Court must issue the nationwide relief that Defendants' criticize. Defendants' attacks on the scope of these requests do not pass muster.

[2] Plaintiffs fleetingly point to Local Civil Rule 65.1 (at 11) to apparently suggest that the factual record upon which Plaintiffs seek preliminary relief is now frozen. But the Court can still consider supplemental materials filed by the parties, particularly as to Plaintiffs' request that a preliminary injunction issue in due course. *See Vote Forward v. DeJoy*, No. 20-CV-2405 (EGS), 2021 WL 1978805, at *4 n.9 (D.D.C. May 18, 2021).

*First*, Defendants contend that the requests cannot bear on a request for nationwide relief. *See* Opp. at 11. But, as explained, that is not true—Defendants' past and future actions shed important light on both (1) the existence of a clear pattern of *ultra vires* conduct; (2) Defendants' use of threats and coercion to compel compliance by States; and (3) the need for, and scope of, prospective relief. *See Hosp. Staffing Sols.*, 736 F. Supp. 2d at 201–02.

*Second*, and relatedly, Defendants contend that because this Court cannot enjoin past conduct, such conduct is somehow now irrelevant. *See* Opp. at 11. But "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Here, DOJ's own actions and statements since the Complaint was filed indicate that it is engaged in a pattern of conduct, so its "past unlawful conduct is 'highly suggestive of the likelihood [and nature] of future violations." *U.S. Dep't of Just. v. Daniel Chapter One*, 89 F. Supp. 3d 132, 143 (D.D.C. 2015) (quoting *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)), *aff'd*, 650 F. App'x 20 (D.C. Cir. 2016).

*Third*, Defendants contend that the forward-looking request—Interrogatory No. 2—infringes upon the deliberative process privilege. *See* Opp. at 12. But "general privilege assertions cannot preclude discovery, particularly when the discovery requests have been crafted specifically to avoid infringing on governmental privileges." *Musk*, 770 F. Supp. 3d at 201; *see also In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988) (noting that invocations of the law enforcement privilege require a "formal claim of privilege . . . in a deliberate, considered, and reasonably specific manner"); Fed. R. Civ. P. 33(b)(4) (noting objections to interrogatories "must be stated with specificity"). If it were otherwise, government defendants could nearly always defeat requests for expedited discovery through generic, overbroad assertions of privilege. In reality, "courts have routinely granted expedited discovery in cases involving challenges to [the]

constitutionality of government action," notwithstanding the possible assertion of executive privileges. *Ellsworth Assoc.*, 917 F. Supp. at 844.

Further, even if *some* aspects of Defendants' future plans remain subject to the deliberative process privilege, that does not mean the privilege will categorically shield all responsive information. The privilege applies exclusively to "pre-decisional" materials, *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898–99 (D.C. Cir. 2015), but does not otherwise protect information about "a policy on which the agency has settled," *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). In other words, "a factual account of a decision already rendered . . . is not privileged." *Damus v. Nielsen*, 328 F.R.D. 1, 6 (D.D.C. 2018) (Boasberg, J.). Defendants' own conduct and public statements suggest they have already settled on a course of conduct, including potentially as to which States to target. *See* ECF No. 19-2, Ex. AM; Ex. AO. "[O]nly the Defendants know the 'contours' of those actions." *All. for Retired Ams. v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025) (quoting *Venetian Casino Resort, L.L.C. v. EEOC*, 409 F.3d 359, 367 (D.C. Cir. 2005)).

*Fourth*, Defendants contend without elaboration that the discovery requests seek "merits discovery." Opp. at 12. But they cite no precedent for the notion that expedited discovery must somehow stand wholly apart from the merits of a case. Such a standard would obviously be unworkable because the propriety of a "preliminary injunction and the merits are intertwined" by definition. *Musk*, 770 F. Supp. 3d at 200; *see also Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (holding "whether petitioners have established a likelihood of success on the merits" is "the first and most important factor" for preliminary relief). Instead of imposing this impossible line in the sand, the reasonableness standard chiefly tries to ensure that any expedited discovery requests are "narrowly tailored to reveal information related to the preliminary

injunction," *Guttenberg*, 26 F. Supp. 3d at 98, without permitting plaintiffs "to circumvent the normal litigation process," *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005). As explained, Plaintiffs' requests are narrowly tailored to discern the breadth and immediacy of Defendants' *ultra vires* conduct—a question that directly bears on the scope of emergency relief—rather than comprehensive merits discovery.

*Finally*, the authorities Defendants rely upon to show overbreadth only underscore the narrowness of Plaintiffs' requests. *See* Opp. at 11–12. For example, the plaintiffs in *Guttenberg* sought depositions bearing on whether Defendants breached a contract, the core merits claim in the matter. *See* 26 F. Supp. 3d at 98–99. The plaintiffs in *Attkisson* sought broad discovery regarding government surveillance in an effort to "test theories . . . not even mentioned in the Complaint." 113 F. Supp. 3d at 163. These overbroad requests bear no resemblance to Plaintiffs' requests here, which target information relating to Defendants' conduct surrounding the upcoming general election, and nothing more.

**C. Factors 4 and 5: The requested discovery imposes minimal burden on Defendants and is appropriate given the litigation posture.**

Defendants also fail to show the requests are burdensome. *See* Opp. at 12–14. They readily *agree* that the most relevant category of responsive materials—communications "comparable to the *California* litigation," Opp. at 13, and what has now been sent to Washington State—constitute a "narrow and discrete" category of documents, *id.* Accordingly, there appears to be little dispute that the Court should require Defendants to produce what all parties appear to agree is a narrow and discrete set of relevant communications.

In any event, the Court should look askance at Defendants' insistence that it would be burdensome to conduct broader searches given the federal government's "statutory role in investigating election law violations." *Id.* For one, Plaintiffs have only asked for documents from

July 1, 2026, through the present—roughly the period in which Defendants have executed the campaign of interference that Plaintiffs challenge in this lawsuit. *See* Compl. ¶¶ 58–84. And, second, Plaintiffs do not seek all documents related to Defendants' enforcement of criminal election laws—only those that (1) make specific, narrowly defined requests of state and local election officials regarding sets of voters; or (2) reference the prospect of criminally prosecuting election officials. *See* ECF No. 16, Ex. A. Defendants offer no explanation as to why such a narrow subset of materials would be difficult to collect and produce in short order. Thus, while expedited discovery will "of course impose some burden" on Defendants, "[w]hen the burden is low, such as responding to only one or a few discovery requests, then this factor supports granting the motion." *Does 1-9*, 2025 WL 894120, at *9 (alteration in original) (quoting *Attkisson*, 113 F. Supp. 3d at 165).

Defendants also complain about having to produce "future communications," Opp. at 13, but the only forward-looking request, Interrogatory No. 2, asks for Defendants to "[i]dentify any States where Defendants intend to send" such communications. *See* ECF No. 16, Ex. B. To the extent such plans are "settled," *U.S. Fish & Wildlife Serv.*, 592 U.S. at 268, and therefore no longer pre-decisional, such a request imposes virtually no burden at all on Defendants. And while Defendants would naturally be subject to an ongoing obligation to produce third-party communications *once issued*, at that point such responsive material would naturally be "ready at hand." Opp. at 13.

Finally, as to the fifth reasonableness factor (litigation posture), Defendants have not asserted that a motion to dismiss is forthcoming—an omission that cuts in favor of Plaintiffs. *Cf. AFL-CIO v. Dep't of Lab.*, 349 F.R.D. 243, 253 (D.D.C. 2025) (noting that a "pending motion to dismiss" may weigh against expedited discovery, albeit not "strongly"). At most they have

indicated that any motion to dismiss would likely be based on standing grounds—an area where discovery is often "beneficial and necessary." *Id.* at 253 n.6. Further still, when it comes to expedited discovery, the "inherently time-limited nature of the election cycle distinguishes this case from others." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 826 F. Supp. 3d 73, 89 (D.D.C. 2026) (expediting DOJ's time to respond to FOIA requests); *see also NAACP v. DHS*, No. 26-cv-3263 (LLA), 2026 WL 3173472, at *4 (D.D.C. Oct. 21, 2026) (weighing this fact in favor of expedited discovery). That is particularly so since Defendants' default time to respond to the Complaint falls on December 21, 2026, *see* Fed. R. Civ. P. 12(a), well after most States will have certified their election results. A Rule 26(f) conference and ordinary discovery would come later still. Simply put, requiring Plaintiffs to delay seeking such discovery would both prejudice Plaintiffs and potentially cause any ensuing discovery to be moot given the time constraints governing this case. *Cf. Musk*, 770 F. Supp. 3d at 202 (granting expedited discovery where it would facilitate "expeditious resolution of th[e] case").

## CONCLUSION

For the reasons above, this Court should grant Plaintiffs' Motion for Expedited Discovery. Plaintiffs respectfully request that this Court set a production deadline as soon as possible.

Dated: October 28, 2026

Respectfully submitted,

/s/ Uzoma N. Nkwonta
Marc E. Elias (DC 442007)
Uzoma N. Nkwonta (DC 975323)
Christopher D. Dodge (DC 90011587)
Nicole E. Wittstein (DC 1725217)
Kevin R. Kowalewski (DC 90045467)
Tori A. Shaw (DC 90036555)*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 948-1135
eliasm@elias.law
unkwonta@elias.law
cdodge@elias.law
nwittstein@elias.law
kkowalewski@elias.law
tshaw@elias.law

*Admitted *pro hac vice*

*Counsel for Plaintiffs DSCC, DCCC, Democratic Governors Association, U.S. Senate Minority Leader Schumer, U.S. House Minority Leader Jeffries, the Nevada State Democratic Party, and Erick Jose Jimenez*