**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DSCC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-3674 (JEB) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF**

# TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiffs Cannot Establish Candidate Standing Under Bost. ..... 2

II. Plaintiffs Cannot Establish Competitor Standing. ..... 7

III. Plaintiffs Cannot Show Organizational Standing. ..... 9

IV. Plaintiffs' Requested Relief Should Be Denied. ..... 10

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases**

*Ariz. All. for Retired Ams. v. Mayes*,
186 F.4th 622 (9th Cir. 2026) .......... 7

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) .......... 6

*Bost v. Illinois State Board of Elections*,
607 U.S. 71 (2026) .......... 2, 4

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) .......... 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 5, 8, 10

*Ctr. for Taxpayer Rts. v. IRS*,
190 F.4th 990 (D.C. Cir. 2026) .......... 10

*DNC v. Trump*,
No. CV 26-3506, 2026 WL 3228366 (D.D.C. Oct. 28, 2026) .......... 4

*DSCC v. Trump*,
__ F. Supp. 3d __, 2026 WL 2681471 (D.D.C. Sept. 13, 2026) .......... 3, 4

*DSCC v. Trump,*
No. 26-5193, 2026 WL 2168617 (D.C. Cir. July 28, 2026) .......... 4, 5

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 7, 9, 10

*Food & Water Watch, Inc. v. Vilsack,*
808 F.3d 905 (D.C. Cir. 2015) .......... 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 6

*LULAC v. Executive Office of the President,*
818 F. Supp. 3d 34 (D.D.C. 2026),
*aff'd*, No. 25-5476, 2026 WL 1991571 (D.C. Cir. July 2, 2026) .......... 4

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 10

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,
366 F.3d 930 (D.C. Cir. 2004) *abrogation on other grounds recognized by*
*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) .......... 5, 6

*New World Radio, Inc. v. FCC*,
294 F.3d 164 (D.C. Cir. 2002) .......... 9

*Shays v. Fed. Election Comm'n*,
414 F.3d 76 (D.C. Cir. 2005) .......... 7

*Sherley v. Sebelius*,
610 F.3d 69 (D.C. Cir. 2010) .......... 7

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 8

*Trump v. California*,
609 U.S. 1032 (2026) .......... 2, 3

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 11

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
517 U.S. 544 (1996) .......... 8

*United States v. California*,
__F.4th __, 2026 WL 3212945 (9th Cir. Oct. 26, 2026) .......... 6, 8, 9

*United States v. California*,
__ F.4th __, 2026 WL 3268272 (9th Cir. Oct. 30, 2026) .......... 11

*Virginia v. Ferriero*,
525 F. Supp. 3d 36 (D.D.C. 2021), *aff'd sub nom on other grounds*
*Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023) .......... 3

*West v. Lynch*,
845 F.3d 1228 (D.C. Cir. 2017) .......... 6

*Wis. Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) .......... 12

**Statutes**

18 U.S.C. § 611(a) .......... 9

## INTRODUCTION

Plaintiffs demanded expedited discovery to understand which States received letters requesting the removal of voters or the segregation or non-issuance of ballots, similar to the letters the Department of Justice ("DOJ") sent to election officials in California. Defendants' interrogatory response explains that DOJ has sent letters only to California and Washington—the two State governments that have not complied. Thus, discovery confirms Plaintiffs fail to show standing under any theory, including the contention that any so-called "amicus state" is likely to "comply" with a letter request "without forcing the Government to go to court." Transcript of October 30, 2026 Hearing on Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction and Motion for Expedited Discovery ("Hr'g Tr."), 7:10-11; 10:14-17; 34:18-25; 35:6-8.

The facts revealed in discovery make Plaintiffs' standing claims—which were already speculative—even more inadequate. DOJ's letters to California and Washington are not self-executing, and any change to the status quo would require the independent action of an Article III court or the voluntary actions of a separate State or local entity. For this reason, Plaintiffs' supplemental brief all but ignores the discovery they demanded, instead rehashing previous arguments akin to a reply brief that this Court previously denied them leave to file. *See* Minute Order (Oct. 27, 2026). In any event, Plaintiffs' recycled arguments do not establish standing, and their motion should be denied.

## ARGUMENT

Plaintiffs' supplemental brief repackages the same standing arguments asserted in their opening brief. *Compare, e.g.,* Plaintiffs' Mem. In Supp. of Their Mot., ECF No. 19-1 ("Pls.' Mot.") at 33, *with* Plaintiffs' Supplemental Brief, ECF No. 30 ("Pls.' Supp. Br.") at 11-14. Specifically,

Plaintiffs again contend that they have: (1) political candidate standing under *Bost*; (2) competitor standing under *Shays*; and (3) organizational standing. *See* Pls.' Supp. Br. at 4. Defendants have already explained why each of these theories fails. Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction and Temporary Restraining Order, ECF No. 25 ("Defs.' Opp.") at 7-19. Nevertheless, Defendants will respond to Plaintiffs' recycled arguments below.

## I. Plaintiffs Cannot Establish Candidate Standing Under *Bost*.

Having unearthed no new facts after an opportunity for discovery, Plaintiffs still lack candidate standing under *Bost v. Illinois State Board of Elections*, 607 U.S. 71 (2026), to challenge the DOJ letters, and Plaintiffs ignore the Department of Homeland Security ("DHS") letters from July 2026 in their supplemental brief.

In *Bost*, political candidates sued their state's board of elections, challenging the law requiring officials to count mail-in ballots within a certain timeframe. 607 U.S. at 74. The Supreme Court held that the plaintiffs had a "personal stake in the rules that govern the counting of votes," which is based on the candidate's "interest in a fair process." *Id.* at 76-77. Consequently, "[r]ules that undermine [this] process" harm "an accurate vote tally" and "the winner's political legitimacy." *Id.* at 78. In their briefing on candidate standing, as well as on traceability and redressability, Plaintiffs appear to parse these harms out as separate and new vehicles to standing. *See* Pls.' Supp. Br. at 4-6, 16-17. But *Bost* did not displace the traditional standing analysis; it merely applied it to the candidate context. *See* 607 U.S. at 78 (analogizing the winner's "loss of legitimacy" to "[r]eputational harms," which "are classic Article III injuries") (citation omitted). Importantly, each harm recognized in *Bost* rests on the premise that the challenged conduct does, in fact, undermine the electoral process.

This crucial premise is lacking in this lawsuit. Not only do the DOJ letters not create a

formal rule, but they have no legal effect on their own as the letters themselves do not tabulate ballots, segregate ballots, or alter any individual's voter registration status. *See Trump v. California*, 609 U.S. 1032, 1037 (2026) (holding that the plaintiffs lacked standing to challenge the President's Executive Order directing the Attorney General to "prioritize" investigating and prosecuting violators of existing federal voting laws because the Executive Order "d[id] nothing to them"); *Virginia v. Ferriero*, 525 F. Supp. 3d 36, 46 (D.D.C. 2021) (holding that the plaintiffs lacked standing to challenge the Archivist's refusal to publish a ratified amendment as part of the Constitution because the publication of the amendment is a formality with "no legal effect"), *aff'd sub nom on other grounds Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023). Indeed, the factual developments since this lawsuit was filed only emphasize that point. California election officials refused to comply with DOJ's letter, forcing the United States to go to an Article III court to seek relief—relief that, as of this date, the United States has not received. In other words, absent the intervention of a federal court, nothing will change with regard to any election procedures. *Bost* is, thus, inapplicable.

Plaintiffs also cannot square this case with any of the district court cases that they rely upon. Although Plaintiffs emphasize that there need not be "a literal change to the formal rules of an election contest for a candidate to suffer harm," Pls.' Supp. Br. at 5, the authority they cite pertains to formal rules alone. Plaintiffs cherry-pick language from other district court orders, suggesting that those courts have found candidate standing in instances like this one. But those cases are factually inapposite.

In *DSCC v. Trump*, the plaintiffs challenged a final rule that was implemented pursuant to an Executive Order, which introduced new envelope designs for mail-in ballots, required States and localities to enroll all mail-in voters in a new database, and directed the Postal Service to verify

each piece of outbound ballot mail. __ F. Supp. 3d __, 2026 WL 2681471, at *2-3 (D.D.C. Sept. 13, 2026). Plaintiffs suggest that the *DSCC* court expanded *Bost* further than it did. In holding that the plaintiffs had standing, that court rejected the defendants' contention that *Bost* only applied to rules that governed vote counting. *Id.* at *5. It did not hold that *Bost* applied to all actions related to elections. Although the court applied candidate standing to rules controlling aspects of the electoral process that were not presented in *Bost*, such as rules affecting whether mail-in ballots would be accepted and under what circumstances, the court still addressed a *rule* that would concretely and with certainty affect the electoral process. Similarly, the district court's relevant standing determination in *LULAC v. Executive Office of the President* pertained to the plaintiffs' ability to challenge a portion of an Executive Order that required voter registration agencies to assess citizenship before providing voters with mail voter registration forms. 818 F. Supp. 3d 34, 67, 86 (D.D.C. 2026), *aff'd*, No. 25-5476, 2026 WL 1991571 (D.C. Cir. July 2, 2026). No such rule, order, or determination carrying any legal effect is at issue here.

Neither does *DNC v. Trump*, which Plaintiffs cite, support their position. *See* No. CV 26-3506, 2026 WL 3228366 (D.D.C. Oct. 28, 2026). In that case, the district court not only relegated its discussion of *Bost* to a footnote, but it expressly stated that it "need not address whether *Bost* extends to a plaintiff who does not challenge a 'rule[ ] that govern[s] the counting of votes in [an] election.'" *Id.* at *9 n.9 (quoting *Bost*, 607 U.S. at 83).

The challenged DOJ letters do not *legally require* States to do anything—a far cry from the legal requirements present in the cases Plaintiffs cite. And even if *Bost* does not require a formal dictation of process, the challenged conduct must have *some* form of tangible or concrete legal effect to "undermine" the electoral process. *Bost*, 607 U.S. at 78. Otherwise, under Plaintiffs' broad reading of *Bost*, anything that might tangentially affect a State's decision in how it

administers elections would confer *per se* standing on candidates.

The D.C. Circuit, in an unpublished opinion, appears to differentiate qualifying Article III injuries in an analogous manner. In *DSCC v. Trump*, many of the same plaintiffs in this case challenged the President's Executive Order directing agencies "to begin developing new rules and procedures for mail voting in the upcoming midterm and future elections." No. 26-5193, 2026 WL 2168617, at *1 (D.C. Cir. July 28, 2026). Like in this case, Minority Leader Jeffries asserted candidate standing under *Bost* to challenge the Executive Order. *See id.* at *5 n.9. But in affirming the district court's denial of injunctive relief on ripeness grounds, the D.C. Circuit noted the difference between harm that would be "felt" by "future agency action to comply with the [Executive] Order"—which would constitute an Article III injury under *Bost*—and harms "tie[d] to the [Executive] Order itself." *Id.* Akin to the *DSCC* case, Plaintiffs' asserted harm tied to the DOJ letters falls short of a qualifying Article III injury. Rather, it requires a "speculative chain of possibilities" that must occur to materialize any of the harms contemplated by *Bost*. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Indeed, Defendants' discovery production makes clear just how speculative that chain of possibilities is.

Plaintiffs' standing theory hinges entirely on a chain of third-party conduct—a high bar that is "substantially more difficult to establish." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 933 (D.C. Cir. 2004) (citation omitted), *abrogation on other grounds recognized by Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017). As Defendants described previously, States or localities will decide how to respond; Plaintiffs have identified no jurisdiction that has voluntarily complied. If a jurisdiction does not, Defendants would need a court order from an independent Article III judge to require those jurisdictions to segregate ballots. And even if the ballots are segregated, the States and localities would be the entities that determine whether any

votes would be invalid under *preexisting and unchallenged* federal law. "Because the necessary elements of causation and redressability in such a case hinge on the independent choices of the regulated third party, 'it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.'" *Id.* at 938 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)).

Expedited discovery has now come and gone, and still, Plaintiffs offer nothing which suggests that States, localities, and courts have or will conduct themselves in a way that would materialize the asserted harm. To the contrary, State governments have refused to comply with the DOJ's letters, and courts have to date denied the Federal Government emergency relief to enforce its interests. *See, e.g.*, *United States v. California*, __F.4th __, 2026 WL 3212945, at *1-6 (9th Cir. Oct. 26, 2026); ECF No. 27-2, Letter from Sec'y Hobbs to Mr. Floyd and Mr. Serrano (Oct. 28, 2026) (Washington Secretary of State's response letter declining to comply with DOJ's request). And in the event that the Federal Government pursues future litigation to enforce its interests, the States and any intervening defendants may fully contest the lawfulness of such enforcement in that proceeding, as the plaintiffs in California did.

This type of speculative injury, which was rejected in *Clapper*, also dooms Plaintiffs' ability to meet their burden as to traceability and redressability. "The 'causal connection between the injury and the conduct complained of' must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 561). "And it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Lujan*, 504 at 561).

At the outset, that some chain of discretionary events must occur before an injury can be

realized undermines any redress that enjoining the DOJ letters would provide. *See West v. Lynch*, 845 F.3d 1228, 1236 (D.C. Cir. 2017) ("If the challenged conduct is at best an indirect or contributing cause of the plaintiff's injury . . . the plaintiff faces an uphill climb in pleading and proving redressability."). In addition, as Defendants previously explained, no action to effectuate the Federal Government's request has occurred; nor can it reasonably be anticipated to occur absent judicial intervention or, at a minimum, the independent choices of third-party jurisdiction. Thus, any expenditures premised on that possibility are unjustified, self-inflicted, and not fairly traceable to the challenged conduct of the Defendants. *See Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622, 634 (9th Cir. 2026) (en banc) (holding that potential expenditures to mitigate the hypothetical impact of a challenged action "cannot support standing" when the alleged impact "lacks record support and is highly speculative" (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 390 (2024))). And to the extent that Plaintiffs argue that the DOJ letters "chill" individual voters from voting, Plaintiffs fail to explain how. *See* Defs.' Opp. at 16 (explaining that harm to individual voters "is speculative because the *effect* of those letters is speculative").

**II. Plaintiffs Cannot Establish Competitor Standing.**

Plaintiffs recycle the same competitor standing argument advanced in their opening brief. *Compare* Pls.' Mot. at 33, *with* Pls.' Supp. Br. at 11-14. As Defendants previously explained, Defs.' Opp. at 12-15, the D.C. Circuit has recognized "illegal structuring of a competitive environment . . . as [a] sufficient [injury] to support Article III standing." *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 85 (D.C. Cir. 2005). But competitor standing requires more than a generalized objection to a government action; rather, a plaintiff must connect a defendant's actions to "an actual or imminent increase in competition" causing the plaintiff to suffer a personal injury. *Sherley v. Sebelius*, 610 F.3d 69, 73 (D.C. Cir. 2010). Plaintiffs have not made that showing here

because they fail to explain how Defendants' actions directed at non-citizen voting will target or disenfranchise lawful voters and cause them competitive harm. Defs.' Opp. at 13.

Plaintiffs first contend that Defendants' letters requesting the removal of non-citizens from voter rolls or the sequestration of potentially unlawful ballots requires them to "adapt their campaign strategies." *See* Pls.' Supp. Br. at 12. Plaintiffs never explain what those strategic changes entail or how they constitute a cognizable injury. Nor do they concretely explain how their campaign strategies must change. In any event, a voluntary decision made in response to a government action is not legal harm. As the Supreme Court explained in *Clapper*, plaintiffs cannot "manufacture standing" by "inflicting harm on themselves" or voluntarily changing their behavior "based on . . . fears of hypothetical future harm that is not certainly impending." 568 U.S. at 416. Thus, a plaintiff's voluntary decision to change their strategies or incur costs in response to hypothetical harm cannot manufacture standing.

Plaintiffs also argue that Defendants' actions are intended to "undermine . . . Democrats' electoral prospects." *See* Pls.' Supp. Br. at 12-13. That contention is unsupported, because Defendants' election measures are directed at preventing *unlawful* voting only. *See See California*, 2026 WL 3212945, at *24 (Bumatay, J., dissenting). Such measures are not partisan, because if implemented, they would apply equally regardless of whether an affected unlawful voter would otherwise support a Republican or Democratic candidate.

Plaintiffs next assert that Defendants' actions have "chilled many eligible voters." Pls.' Supp. Br. at 13 (citing Decl. of Lillie Snyder Boss ¶¶ 9-10, ECF No. 19-4; Decl. of Caitlin Remmel ¶¶ 10-11, ECF No. 19-5; Decl. of Jillian Edelman ¶¶ 10-11, ECF No. 19-6; Decl. of Daniele Monroe-Moreno ¶¶ 8-9, ECF No. 19-7). As previously noted, Plaintiffs fail to offer any concrete evidence of such chilling. Defs.' Opp. at 13. Plaintiffs' conclusory statements in declarations fail

to show any harm that is concrete, actual, and *particular* to a certain identified member. *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 493-94 (2009); *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996).

Moreover, the speculative nature of Plaintiffs' theory underscores why competitor standing is unavailable. As noted, the challenged measures are directed only at unlawful voting by non-citizens in contravention of a Congressionally enacted criminal statute, a subject that falls within the Executive Branch's authority to enforce federal law, including 18 U.S.C. § 611(a). *See California*, 2026 WL 3212945, at *24 (Bumatay, J., dissenting). Plaintiffs never explain how letters that carry no independent legal effect will deter lawful voters from participating in elections. A chain of contingencies would have to materialize to create the injury that Plaintiffs purport to suffer. Even under a competitor-standing theory, this is inadequate. *See, e.g.*, *New World Radio, Inc. v. FCC*, 294 F.3d 164, 171 (D.C. Cir. 2002) (rejecting a competitor-standing theory where the plaintiff's injury could occur "only if" the defendant subsequently "[sought] *and* secure[d] the relocation of its . . . broadcast license to the Washington, D.C. programming area").

In short, Plaintiffs have failed to identify any actual or imminent competitive injury that is traceable to Defendants' conduct, and Plaintiffs' competitor standing theories fail.

**III. Plaintiffs Cannot Show Organizational Standing.**

Finally, Plaintiffs' supplemental brief provides no additional support for its organizational standing theory. The Court noted at the hearing that Plaintiffs' declarations in support of this claim are "general," and questioned whether they were "specific enough for organizational standing." Hr'g Tr. at 16:25-17:02. Plaintiffs have not submitted any additional evidence to elevate their organizational standing claims from the "general" to the sufficiently specific. *See* Pls.' Supp. Br. at 13.

Defendants previously explained that Plaintiffs' organizational standing argument, based on allegations of diverted resources and harm to their mission, is foreclosed under *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). The additional voting rights activities Plaintiffs allege that they have recently undertaken are entirely consistent with the mission of the organizations, and consistent with activities they have already undertaken. "[A]n organization may not establish standing simply by spending money 'opposing those policies' that it 'dislike[s].'" *Ctr. for Taxpayer Rts. v. IRS*, 190 F.4th 990, 1001 (D.C. Cir. 2026) (citation omitted).

Standing cannot be predicated on the fact that a new government action requires organizations like Plaintiffs to set aside time to understand the new action, to adjust their resources in response, and to increase or modify the degree of support they provide for clients or members who may be adversely affected. "[T]hat theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *All. for Hippocratic Med.*, 602 U.S. at 395. Plaintiffs' organizational standing theory fails.

**IV. Plaintiffs' Requested Relief Should Be Denied.**

Plaintiffs contend that a "nationwide injunction" is warranted because Defendants *might* send letters to additional States in the future. *See* Pls.' Supp. Br. at 18. As previously explained, issuing an injunction on the basis of speculative future actions is improper, because it would indefinitely preclude the Federal Government from enforcing federal law and would violate the separation of powers. Defs.' Opp. at 41. First, Plaintiffs lack standing to enjoin "[a]llegations of *possible* future injury." *Clapper*, 568 U.S. at 409 (citation omitted); *see also Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("'[P]laintiffs must demonstrate standing for each claim that they press'

against each defendant, 'and for each form of relief.'" (citation omitted)). Moreover, as the Supreme Court emphasized, "federal courts do not exercise general oversight of the Executive Branch" and may not "prevent[ ] the Government from enforcing its policies against nonparties." *Trump v. CASA, Inc.*, 606 U.S. 831, 859-61 (2025). Granting Plaintiffs' injunction would prohibit the government from taking future actions to enforce the law and should be denied.

Next, perhaps recognizing that their request for a nationwide injunction is legally untenable, Plaintiffs now ask the Court to issue an injunction covering three States within the Ninth Circuit. *See* Pls.' Supp. Br. at 17-18. But this revised request does nothing to address the central issue discussed at the October 30, 2026 hearing, *i.e.*, that Plaintiffs still have not established standing with respect to those States. Nor do Plaintiffs grapple with the Ninth Circuit's rulings in similar litigation involving Defendants' noncitizen voting enforcement efforts, which undermine a basis for relief here.

As the government previously stated, the letters sent to State and county officials are not self-executing; they do not compel anyone to do anything. Although they do so at their own legal peril, the fact remains that States and counties may disregard the government's demands in these letters. Defendants would need to seek an order from an Article III court to compel California or other States to take the actions requested in the letters, should they refuse to comply with Defendants' requests. To date, in the *California* litigation, the district court and the Ninth Circuit have denied the government's motions to compel California and Los Angeles County to comply with the request to segregate the ballots of the non-citizens on the list. *See United States v. California*, __ F.4th __, 2026 WL 3268272 (9th Cir. Oct. 30, 2026) (denying motion for injunction pending appeal). And for its part, California and Los Angeles County have repeatedly refused to comply with the government's requests and have done so in a very public manner that should leave

no doubt in any reasonable voter's mind that California and Los Angeles County will not be taking voluntary action in response to the government's demand letters. It is thus *less* likely that there will be injury in those States than in others.[1]

In these circumstances, Plaintiffs cannot establish an "actual or imminent injury" that is "certainly impending and immediate." *Food & Water Watch, Inc. v. Vilsack,* 808 F.3d 905, 914 (D.C. Cir. 2015) (citation omitted). Thus, Plaintiffs' request for an injunction covering states in the Ninth Circuit is improper.

Plaintiffs' arguments with respect to Nevada are unavailing. *See* Pls.' Supp Br. at 18-19. To show standing, "the injury 'must be both certain and great; it must be actual and not theoretical.'" *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "The moving party must show the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (citations omitted).

To reiterate, Defendant DOJ has not sent a letter requesting that Nevada sequester ballots submitted by unlawful citizen voters. DHS sent a letter to Nevada election officials on July 16, 2026, but that letter simply identified possible noncitizens registered to vote and requested that

[1] On Friday, October 30, 2026, the Northern District of California granted an *ex parte* nationwide temporary restraining order that, among other things, requires Defendants to refrain from the following: "Defendants shall not demand that any state or local election official (i) remove specific registered voters from their statewide voter registration lists; (ii) refuse to issue ballots to specific registered voters; or (iii) segregate or otherwise not count any ballots cast by specific registered voters for the November 3, 2026 General Election, solely on the basis that the ballot belongs to an individual alleged by Defendants to be ineligible to vote[.]" Order Granting TRO at 6-7, *Serv. Emps. Int'l Union, AFL-CIO et al. v. DOJ et al.*, Case No. 3:26-cv-12800 (N.D. Cal. 2026), ECF No. 26. Defendants in *SEIU* have filed a request for a stay of the Court's order. *Id.* at ECF Nos. 31, 33. On November 1, 2026, Defendants filed a stay motion in the Ninth Circuit. *See* Emergency Motion Under Circuit Rule 27-3 For Immediate Administrative Stay and Stay Pending Appeal and Petition for Mandamus, *Serv. Emps. Int'l Union, AFL-CIO et al. v. DOJ et al.*, Case No. 26-cv-7303 (9th Cir. 2026).

Nevada work with the government to verify the list's accuracy. *See* Declaration of Uzoma N. Nkwonta in Supp. of Pls.' Mot., ECF No. 19-2, ¶ 16, Ex. L. Thus, Plaintiffs have not shown irreparable harm because any injury is speculative and not imminent.

## CONCLUSION

For the reasons explained above, the Court should deny Plaintiffs' motion for temporary restraining order and preliminary injunction.

Dated: November 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director

*<u>/s/ Kathryn Barragan</u>*
Kathryn Barragan (DC Bar No. 90026294)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 598-7696
Email: Kathryn.e.barragan@usdoj.gov

Abigail Nusbaum (FL Bar No. 1059558)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 451-7304
Email: Abigail.S.Nusbaum@usdoj.gov

*Counsel for Defendants*